# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Calvin Henson, Daniel James Collins, Jason Robinson, Russell Taylor and All Those Similarly Situated, Respondents,

v.

South Carolina Department of Corrections and the South Carolina Department of Juvenile Justice, Petitioners.

Appellate Case No. 2025-000689

---

## ON WRIT OF CERTIORARI TO THE COURT OF COMMON PLEAS

---

Appeal from Dorchester County
Heath P. Taylor, Circuit Court Judge

---

Opinion No. 28343
Heard May 19, 2026 – Filed July 22, 2026

---

## REVERSED AND REMANDED

---

Andrew F. Lindemann, Lindemann Law Firm, P.A., of Columbia, for Petitioners South Carolina Department of Corrections and South Carolina Department of Juvenile Justice.

David Allan DeMasters, Riley Pope & Laney, LLC, of Columbia, for Petitioner South Carolina Department of Juvenile Justice.

Hugh W. Buyck, Gordon Wade Cooper, Jeffrey Herman Lappin, Buyck Law Firm, LLC, of Mt. Pleasant, all for Petitioner South Carolina Department of Corrections.

Andrew Spencer Platte, Earhart Overstreet, of Charleston; Arnold S. Goodstein, Goodstein Law Firm, LLC, of St. George; C. Alan Runyan, of Beaufort; C. Carter Elliott Jr., Andrew William Kunz, Lauren Knight Slocum, Elliott, Phelan, Kunz & Slocum, of Georgetown, all for Respondents.

---

**JUSTICE FEW:** The circuit court certified two classes of similarly situated plaintiffs pursuant to Rule 23(a) of the South Carolina Rules of Civil Procedure. The classes include all inmates who were sexually assaulted while in the custody of the South Carolina Department of Corrections (SCDC) or the South Carolina Department of Juvenile Justice (SCDJJ) "from 2012 until present." SCDC and SCDJJ appealed the certification order, but the court of appeals dismissed the appeal on the basis that an interlocutory order certifying a class is not immediately appealable. We issued a common-law writ of certiorari to directly address the circuit court's order certifying the classes. We reverse the certification order and remand the case to the circuit court for discovery and trial only in the individual capacity of each named plaintiff.

## I.      Facts and Procedural History

Plaintiffs Calvin Henson, Daniel James Collins, Jason Robinson, and Russell Taylor—each an inmate at SCDC or SCDJJ—filed this lawsuit in their individual capacities and as purported representatives of a class of similarly situated inmates. The named plaintiffs—whom we refer to collectively as Henson—allege prison officials were negligent in failing to implement and enforce appropriate policies and procedures and in failing to provide sufficient prison staff. Henson claims SCDC and SCDJJ's adoption of and compliance with these policies and procedures and provision of a sufficient staff of prison guards "would have prevented the sexual assaults" they contend they suffered.

Henson filed a motion to certify a class under Rule 23(a), requesting the class be defined as "All individuals that have been under the custody and care of the South Carolina Department of Corrections ('SCDC') or the South Carolina Department of Juvenile Justice ('SCDJJ') in South Carolina from 2012 until present who were

victims of rape and/or sexual assault."  The memorandum Henson filed in support of the motion indicated the class could include anywhere from 1,600 to 64,000 inmates for SCDC and 70 to 2,800 juveniles for SCDJJ.  Henson argued "common issues of fact and law clearly predominate over individual class member issues" because "all inmates find themselves in the same situation where" SCDC and SDCJJ negligently failed to protect them from being raped.  Henson later filed a reply memorandum that included statistics SCDC and SCDJJ are required to maintain under the federal Prison Rape Elimination Act (PREA)[1] showing 1,768 inmates reported sexual assaults to SCDC and SCDJJ between 2012 and 2022.

The circuit court found Henson satisfied all elements of Rule 23(a).  As to Rule 23(a)(2), the court found the "common legal theories shared by the putative class members and the finding of a foreseeable injury of the putative class members due to the actions of" SCDC and SCDJJ satisfied the requirement of the Rule.  The court then issued an order certifying two classes with the following class definitions:

> All individuals that have been under the custody and care of the South Carolina Department of Corrections ("SCDC") in South Carolina from 2012 until present who were victims of a nonconsensual sexual battery.

> All individuals that have been under the custody and care of the South Carolina Department of Juvenile Justice ("SCDJJ") in South Carolina from 2012 until present who were victims of a nonconsensual sexual battery.

SCDC and SCDJJ appealed the class certification order to the court of appeals.  The court of appeals dismissed the appeal, finding the order was not immediately appealable.  *Henson v. S.C. Dep't of Corr. & S.C. Dep't of Juv. Just.*, S.C. Ct. App. dated Jan. 3, 2025.  SCDC and SCDJJ then filed a petition requesting this Court

---

[1] Congress enacted PREA in 2003 to—among other reasons—"make the prevention of prison rape a top priority in each prison system" and "develop and implement national standards for the detection, prevention, reduction, and punishment of prison rape."  34 U.S.C.A. § 30302(2)-(3).  The United States Department of Justice (DOJ) issued a final agency rule in 2012, "adopting national standards to prevent, detect, and respond to prison rape, as required" under PREA.  National Standards to Prevent, Detect, and Respond to Prison Rape, 77 Fed. Reg. 37106, 37106 (June 20, 2012) (effective Aug. 20, 2012).

issue a writ of certiorari either: (1) to the court of appeals pursuant to Rule 242(a), SCACR, or (2) to the circuit court pursuant to our authority to issue a common-law writ of certiorari. We declined to issue a writ of certiorari to the court of appeals, but we granted the request to issue a common-law writ of certiorari to the circuit court. *See generally State v. Price*, 441 S.C. 423, 433, 895 S.E.2d 633, 638 (2023) (explaining this Court "may use a common-law writ of certiorari to correct errors of law, particularly where a trial court exceeded its authority" (citing S.C. Const. art. V, § 5; S.C. Code Ann. § 14-3-310 (2017))).

## II.  Immediate Appealability and Common-Law Certiorari

Even though we denied the request for a writ of certiorari to the court of appeals, we emphasize the court of appeals was correct to dismiss the appeal. In previous opinions discussing the immediate appealability of interlocutory class certification orders, we used flexible language indicating class certification orders may be immediately appealable under limited circumstances. *See, e.g.*, *Hensley v. S.C. Dep't of Soc. Servs.*, 429 S.C. 144, 148, 838 S.E.2d 510, 512 (2020) ("[C]lass certification orders are *ordinarily* not immediately appealable." (emphasis added)); *Salmonsen v. CGD, Inc.*, 377 S.C. 442, 448, 661 S.E.2d 81, 85 (2008) ("The *general rule* established by this Court is that class certification orders are not immediately appealable." (emphasis added)); *Ferguson v. Charleston Lincoln Mercury, Inc.*, 349 S.C. 558, 565, 564 S.E.2d 94, 98 (2002) ("*Usually*, an order denying class certification is interlocutory and not immediately appealable." (emphasis added)), *overruled in part on other grounds by Hughes ex rel. Estate of Hughes v. Bank of Am. Nat'l Ass'n*, 442 S.C. 113, 139 n.7, 898 S.E.2d 102, 116 n.7 (2024); *Eldridge v. City of Greenwood*, 308 S.C. 125, 127, 417 S.E.2d 532, 534 (1992) ("Orders under Rule 23, SCRCP are interlocutory and thus, immediately appealable only *in certain circumstances*." (emphasis added)). Pursuant to our decision today, however, an interlocutory order granting or denying class certification is *never* immediately appealable to the court of appeals. There are no exceptions.[2]

---

[2] Nothing in our decision today affects the validity of the separate principle, "The appellate courts have discretion . . . to consider an unappealable order if an appealable issue is before the court and a ruling on appeal will avoid unnecessary litigation." *Roberts v. Recovery Bureau, Inc.*, 316 S.C. 492, 495 n.2, 450 S.E.2d 616, 618 n.2 (Ct. App. 1994) (citing *Hite v. Thomas & Howard Co. of Florence*, 305 S.C. 358, 360, 409 S.E.2d 340, 341 (1991)). We discussed this principle in several cases as being applicable to class certification orders if the appellate court has before it another order that is immediately appealable. *See, e.g.*, *Salmonsen*, 377 S.C. at 449, 661 S.E.2d at 85 ("This Court . . . has reviewed interlocutory orders involving

In very rare circumstances, however, this Court has exercised its discretion to use a common-law writ of certiorari to correct a trial court's errors of law. *Price*, 441 S.C. at 433, 435 n.5, 895 S.E.2d at 638, 639 n.5. We have emphasized we will use this authority only where "exceptional circumstances" exist, *Laffitte v. Bridgestone Corporation*, 381 S.C. 460, 471, 674 S.E.2d 154, 160 (2009), and we "will not . . . use a common-law writ of certiorari as a substitute for a party's right of appeal," *Price*, 441 S.C. at 434, 895 S.E.2d at 639. Our hesitance to use this authority is demonstrated by the fact we have done so in published opinions only a handful of times over the past hundred years. As we will emphasize again below, we caution litigants dissatisfied with a circuit court's ruling on class certification that they should not lightly seek review of that ruling through a common-law writ of certiorari.

### III. Rule 23(a)—Class Certification Requirements

Our rules of civil procedure are generally designed "to secure the just, speedy, and inexpensive determination of every action." Rule 1, SCRCP. This is particularly true for the class action procedure set forth in Rule 23(a), which we adopted in 1985 based on the then-existing language of Rule 23(a) of the Federal Rules of Civil Procedure.[3] *See* Rule 86(a), SCRCP ("These rules shall take effect on July 1, 1985."); Rule 23(a), SCRCP Note (stating the language of Rule 23(a) "is drawn principally from Federal Rule 23(a)"). Shortly before we adopted Rule 23(a), the Supreme Court of the United States observed that a "principal purpose" of the class action procedure was "the efficiency and economy of litigation." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553, 94 S. Ct. 756, 766, 38 L. Ed. 2d 713, 726 (1974); *see also Am. Pipe & Constr. Co.*, 414 U.S. at 555-56, 94 S. Ct. at 767, 38 L. Ed. 2d at 728 (adopting a particular interpretation of Rule 23 because doing so was "necessary to insure effectuation of the purposes of litigative efficiency and economy that the Rule in its present form was designed to serve"). This purpose of

---

class certification when they contain other appealable issues." (citing *Ferguson*, 349 S.C. at 565, 564 S.E.2d at 98, and *Eldridge*, 308 S.C. at 127, 417 S.E.2d at 534)). Under the *Roberts* and *Hite* principle—whether the appeal is taken from another order in the same case or a separate ruling in the same order—the consideration of the interlocutory certification order is within the appellate court's discretion because the appeal is taken from an immediately-appealable order or ruling, not from the certification order or ruling.

[3] The federal rule has been amended several times since 1985, but we have not amended Rule 23(a) of the South Carolina Rules of Civil Procedure.

achieving efficiency through the use of a class action is accomplished by requiring representatives of and counsel to a proposed class to satisfy each of the elements of our Rule 23(a), particularly the Rule 23(a)(2) requirement that "there are questions of law or fact common to the class." This Rule 23(a)(2) requirement is universally referred to as "commonality."

This Court recently discussed this Rule 23(a)(2) commonality requirement and the imperative of efficiency in class action litigation in *Hensley*, stating "there must be a proper balance between common and individualized issues in order to achieve the efficiencies the class procedure was designed to promote." 429 S.C. at 152, 838 S.E.2d at 514. We noted the court of appeals had reversed the circuit court's class certification order in that case "on the basis the [plaintiffs] did not satisfy the commonality requirement of Rule 23(a)," 429 S.C. at 148, 838 S.E.2d at 512, and "on the basis that there is some predominance-related requirement in Rule 23(a)," 429 S.C. at 152, 838 S.E.2d at 514. We did not reach the merits of those two points in *Hensley*, however, because we found the interlocutory class-certification order was not immediately appealable. 429 S.C. at 154, 838 S.E.2d at 515. We did point out, though, the court of appeals' recognition of a predominance requirement "has support in academic sources and in our precedent." 429 S.C. at 152, 838 S.E.2d at 514.

Today, we do reach the merits of commonality and predominance. Our analysis of these issues requires us to consider the relationship that a class representative must demonstrate to exist between questions that are common to all class members and questions that must be litigated on an individual basis. We begin with a passage we quoted in *Hensley*, 429 S.C. at 152-53, 838 S.E.2d at 514, written in 1985 by Professor Emeritus James F. Flanagan—the original reporter for our Rules of Civil Procedure—and the late Professor and former Dean Harry M. Lightsey Jr.:

> [T]he class action must be a better procedural mechanism for resolving the litigation than named joinder or separate litigation. Under Fed. R. Civ. P. 23(b)(3), this is reflected in the requirement that the common questions predominate over individual issues. Although not specifically required by this Rule, it is inherent in the general conditions for class actions. The Court should first determine the existence of common questions, and then whether they are sufficiently central to justify the class action.

Harry M. Lightsey Jr. & James F. Flanagan, SOUTH CAROLINA CIVIL PROCEDURE 199 (1st ed. 1985).

This Court discussed the necessary relationship between common and individual questions in *Gardner v. South Carolina Department of Revenue*, 353 S.C. 1, 577 S.E.2d 190 (2003). We began our discussion in that case by recognizing that "[n]ot every issue in the case must be common to all class members." 353 S.C. at 21, 577 S.E.2d at 200 (citation omitted). We then acknowledged there were "at least two common questions of law" in the case whose resolution applied equally to all class members. 353 S.C. at 22, 577 S.E.2d at 201. We focused, however, on the legal requirement that individual class members "cannot prevail unless they establish they were prejudiced." *Id.* We explained commonality requires that "a determinative critical issue overshadows all other issues." 353 S.C. at 21-22, 577 S.E.2d at 201 (quoting *Stott v. Haworth*, 916 F.2d 134, 145 (4th Cir. 1990)). We held the circuit court erred in certifying the classes because—in that particular case—the necessity of having each individual class member prove prejudice "negates the benefits of a class action suit."[4] 353 S.C. at 22, 577 S.E.2d at 201.

## IV.    Analysis of Common and Individual Questions in this Case

With this backdrop in mind, we turn to the three issues presented to the Court by SCDC and SCDJJ. Each of these issues in some fashion invokes the efficiency concerns at the root of the requirements of commonality and predominance. For example, SCDC and SCDJJ argue "the class definitions as adopted by the trial court" are not "proper under South Carolina law" because they do not "allow for the manageability and efficiencies required of a class action." To address this and the other issues SCDC and SCDJJ raise on appeal and the elements of Rule 23(a), we consider how this case would actually be tried as a class action.

First—according to the circuit court's certification order—the class includes only inmates who were "victims of a nonconsensual sexual battery"—or in common terms—inmates who were "raped." This means an individual inmate may not be included in the class unless Henson—as the class representative—first proves the inmate was raped. This is a question of fact as to which SCDC and SCDJJ enjoy the

---

[4] In *Gardner*, the trial court also certified a class of defendants. 353 S.C. at 9, 577 S.E.2d at 199. Focusing on the reality that the prejudice analysis would be different not only between class members, but also between defendants, we held certifying each class was error. 353 S.C. at 20-23, 577 S.E.2d at 200-01.

right to a trial by jury. *See* S.C. Const. art. I, § 14 ("The right of trial by jury shall be preserved inviolate."). Therefore, for each potential class member, a jury will have to hear testimony and consider evidence as to whether that particular inmate was raped, and then make an individual determination of class membership by making a factual finding that the inmate was or was not raped.

Second, a jury will have to hear testimony and consider evidence of the actions of SCDC and SCDJJ as to whether they were negligent in failing to prevent the rapes. This is the primary question Henson argues is common to all class members, and thus, he argues, may be resolved at trial with one class-wide finding by a jury. We will discuss this "common question" extensively below.

Third, a jury will have to hear testimony and consider evidence on whether SCDC and SCDJJ's allegedly negligent conduct proximately caused each individual rape, as proximate cause is an essential element of every negligence case. *See Hurd v. Williamsburg Cnty.*, 363 S.C. 421, 427, 611 S.E.2d 488, 492 (2005) ("In a negligence action the plaintiff must prove proximate cause."). Proximate cause "is a question of fact for the jury" and "requires proof of . . . causation-in-fact." *J.T. Baggerly v. CSX Transp., Inc.*, 370 S.C. 362, 369, 635 S.E.2d 97, 101 (2006). "Causation-in-fact is proved by establishing the injury would not have occurred 'but for' the defendant's negligence . . . ." *Id.* (quoting *Bramlette v. Charter-Med.-Columbia*, 302 S.C. 68, 72, 393 S.E.2d 914, 916 (1990)). On this point, it is obvious that even perfect compliance with all applicable standards for prison management under PREA or otherwise is not going to prevent all sexually inappropriate conduct in prisons. Thus, as to each individual class member, Henson must present individualized evidence to satisfy the burden of proving "but for" cause—that is, Henson must prove each inmate would not have been raped but for the wrongful conduct of SCDC or SCDJJ.

Finally, a jury will have to hear testimony and consider evidence as to each individual inmate's damages.

As we mentioned above, SCDC and SCDJJ's internal records contain 1,768 reports of sexual assaults in the prisons during the applicable time period. The circuit court wrote in its order this number "appears to be the minimum of potential putative class members." Using this "minimum" number—and recognizing that no inmate may become a member of the class until a factual determination has been made as to whether the inmate was raped—the circuit court must begin the trial of this case as a class action by conducting one or more mini-trials in which a jury makes at least 1,768 separate findings of fact as to whether each individual inmate was raped. As

to each of these 1,768 factual questions, Henson must present testimony and evidence to support the contention the individual inmate was raped. Many of these presentations will meet legal challenges on motions for directed verdict or otherwise. In addition, as to each inmate, SCDC or SCDJJ is entitled to make an opening statement, present their own testimony and evidence, and then make a closing argument. Regardless of whether this enormous task may be completed with one jury, requires 1,768 juries, or could be managed with some number in between, the task would—to put it mildly—overwhelm the court.

Importantly, this overwhelming portion of the jury's work is only to determine class membership. After class membership is determined, class counsel is required to send notice to each of the class members and provide an opportunity for each member to opt out. *See generally Salmonsen*, 377 S.C. at 457, 661 S.E.2d at 89 ("[I]n order to provide minimal due process, absent class plaintiffs[] must receive notice plus an opportunity to be heard and participate in the litigation." (quoting *Hosp. Mgmt. Assocs. v. Shell Oil Co.*, 356 S.C. 644, 654, 591 S.E.2d 611, 616 (2004))); *Salmonsen*, 377 S.C. at 460, 661 S.E.2d at 91 (stating "we adopt the 'opt-out' class action and notification procedure as the exclusive method of class action litigation in this state").

After notice has been provided and the final composition of the class has been determined, another jury trial must take place. In that trial—which almost certainly cannot be conducted with the same jury that determined class membership—a jury must resolve the liability of SCDC or SCDJJ.

Henson argues this is a common question that may be resolved by one finding of negligence on the part of SCDC and SCDJJ. We question whether the trial of this question will be so simple. The certified class includes all inmates who were raped "from 2012 until present." Compliance with applicable standards for prison management is not a static matter, and can vary over the years. For example, if the applicable standards for the conduct of prison officials change, or if SCDC or SCDJJ's degree of compliance with those standards changes, then the answer to the question whether the conduct of SCDC or SCDJJ management constitutes negligence could also change. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374, 390 (2011) (discussing commonality and stating, "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the

generation of common answers." (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009))).

To illustrate this point, we turn to PREA.[5] Congress and the DOJ changed the PREA standards several times during the period of time covered by the circuit court's class definitions—"from 2012 until present"—each in a manner that could make a significant difference in the likelihood of SCDC or SCDJJ facing civil liability for an individual rape. The first change occurred in 2014 when the DOJ set a May 15, 2014 deadline, requiring states for the first time to provide (1) "assurances" to the DOJ of progress toward PREA compliance, or (2) "certifications" of actual compliance.[6] The second change was made in 2016, providing that after 2022 states were no longer permitted to simply assure progress towards PREA compliance but were required to certify existing compliance.[7] The third change—also made in 2016—provided a state may maintain federal funding for its prison system by auditing some—but not necessarily all—of its prisons for PREA compliance. This third change permitted states to make an "emergency assurance" from 2022 until 2025 certifying "that the State has audited not less than 90 percent of prisons" for

---

[5] Henson does not specifically rely on PREA in the Amended Complaint. There can be no doubt, however, PREA will be a significant factor in determining the standard of care owed by prison officials. In the Act itself, Congress set forth one of the purposes of PREA as to "develop and implement national standards for the detection, prevention, reduction, and punishment of prison rape." 34 U.S.C.A. § 30302(3). We use this discussion of PREA as an illustration of how difficult it might be to determine negligence on a class-wide basis based on any standard, not to suggest PREA is the exclusive or even primary source of the standard of care.

[6] *See* 34 U.S.C.A. § 30307(e)(7)(A) (designating the effective date for the requirement that states submit a certification or assurance); Press Release, Department of Justice, Department of Justice Announces 48 States and Territories have Committed to Ending Prison Rape (May 28, 2014), https://www.prearesourcecenter.org/sites/default/files/content/department_of_justi ce_prea_compliance_press_release.pdf (last visited July 14, 2026) (stating "May 15, 2014, was the deadline for states and territories to submit certifications or assurances" of PREA compliance for fiscal year 2014).

[7] Justice for All Reauthorization Act of 2016, Pub. L. No. 114-324, 130 Stat. 1948 (codified at 34 U.S.C.A. § 30307(e)(2)(D)(ii)).

the purpose of PREA compliance.[8]  South Carolina's response to PREA varied over this period of time from (1) no reporting to the DOJ until 2014, (2) submitting assurances of future compliance from 2014 to 2022, and then (3) instead of certifying compliance, submitting "emergency assurances" until 2025.[9]

Consider several potential class members: one raped in 2012 when no reporting of PREA compliance was required, one raped in 2018 when states were permitted to simply assure progress toward PREA compliance, and one raped in 2024 when states were required to certify compliance.  Also consider as to the 2024 rape—which occurred at a time when South Carolina made an "emergency assurance" indicating it audited some but not all prisons for PREA compliance—whether the rape occurred in a prison that had been audited for compliance with PREA or occurred in a prison not audited.  Finally, consider the type of prison facility in which the rape occurred, because PREA standards vary between the various types.  *Compare* 28 C.F.R. §§ 115.11 to -93 (2026) ("Standards for Adult Prisons and Jails"), *with* 28 C.F.R. §§ 115.211 to -293 (2026) ("Standards for Community Confinement Facilities").[10]

Each of these scenarios presents significantly different facts on the question of whether prison officials were negligent under South Carolina law, depending on when and where a particular rape occurred.  In turn, these different factual scenarios create significant variability in the likelihood of SCDC or SCDJJ facing civil liability for an individual rape.  This means it is somewhat—if not highly—likely the answer to the question whether prison officials were negligent in failing to prevent the rape

---

[8] Justice for All Reauthorization Act of 2016, Pub. L. No. 114-324, 130 Stat. 1948 (codified at 34 U.S.C.A. § 30307(e)(2)(D)(iii)).

[9] *See* BUREAU OF JUST. ASSISTANCE, U.S. DEP'T OF JUST., *Certification and Assurance Submissions for Fiscal Years 2014-2025*, https://bja.ojp.gov/program/prea/overview (last visited July 14, 2026) (listing certifications, assurances, and emergency assurances of PREA compliance by fiscal year under the "Governors' PREA Certifications and Assurances" heading).

[10] *See* 28 C.F.R. § 115.5 (2026) (defining "Community confinement facility" as "a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community correctional facility (including residential re-entry centers), other than a juvenile facility, in which individuals reside as part of a term of imprisonment or as a condition of pre-trial release or post-release supervision").

is not going to be the same for all class members. Thus, we question whether it will be sufficient to have one jury answer the negligence question on a class-wide basis, or it will be necessary for one or more juries to answer the negligence question separately for each class member. In other words, because it is entirely possible a jury might find the applicable defendant negligent as to a rape that occurred in 2012 but then find the defendant not negligent for a rape that occurred later, or the other way around, we are not convinced even this question is truly common to the entire class.

Next, regardless of whether that second question may be treated as one common to the entire class, the questions of proximate cause and damages clearly require individual findings by a jury. In fact, one or more juries must make at least 1,768 separate determinations of whether Henson proved proximate cause as to each class member, and then consider separate damages calculations for 1,768 class members. As to each of these factual questions, Henson must make an individualized factual presentation, and SCDC or SCDJJ is entitled to make an opening statement, present its own testimony and evidence, and then make a closing argument.

But the 1,768 "minimum" is clearly not the applicable number. It is a central tenet of class action law that class counsel owes a fiduciary duty to the entire class, including absent class members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965, 2974, 86 L. Ed. 2d 628, 642 (1985) ("[T]he Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members."); *Premium Inv. Corp. v. Green*, 283 S.C. 464, 470, 324 S.E.2d 72, 76 (Ct. App. 1984) ("[A] plaintiff who sues on behalf of a class and the attorney representing the class assume a fiduciary obligation to absent members of the class.").[11] In their memorandum in support of the motion for class certification—apparently believing using a large number would improve their standing in some manner—Henson indicated the class could include as many as 64,000 inmates from SCDC and 2,800 inmates from SCDJJ. Because class counsel owes a fiduciary duty to each of those 66,800 individuals, counsel is not free to pursue only the strongest claims, but must also pursue recovery for potential class members whose claims may be doubtful. Thus, it is difficult to imagine how counsel

---

[11] *See also* MANUAL FOR COMPLEX LITIGATION § 21.12 (4th ed. 2004) ("Rule 23 and the case law make clear that, even before certification or a formal attorney-client relationship, an attorney acting on behalf of a putative class must act in the best interests of the class as a whole.").

might pare down the number of potential members of the classes even to the overwhelming "minimum" of 1,768.

## V.     Commonality and Predominance Under Rule 23(a), SCRCP

SCDC and SCDJJ do not frame their issues in this petition in terms of commonality or predominance. For example, as to one of the issues, they argue Rule 23 should "be interpreted as containing an implicit threshold requirement that the members of a proposed class be readily identifiable," and, "A class definition must be crafted in such a way that the putative class members are readily . . . ascertainable by objective criteria." Thus, they argue, this Court should "recognize an 'ascertainability requirement' under Rule 23, SCRCP." They also argue the circuit court erred in certifying the classes because "the class definitions . . . create what are commonly referred to as 'fail-safe' classes."[12] As to the issue we referenced in section IV, SCDC and SCDJJ argue:

> If the Court allows these fact-intensive and fail-safe class definitions to proceed on remand, the trial court will be required to engage in hundreds of mini-trials . . . just to determine whether particular SCDC inmates and SCDJJ juveniles meet the class definitions. That will render the classes unmanageable . . . and, more importantly, defeat the efficiencies at the heart of the class action process.

In recent years, this Court has refocused the analysis of questions governed by our Rules to the actual language of the Rule. *Swing v. Swing*, 445 S.C. 340, 346, 914 S.E.2d 158, 161 (2025); *see also Whitfield v. Schimpf*, 444 S.C. 633, 656 n.7, 911 S.E.2d 310, 322 n.7 (2025) (stating, "This Court has recently emphasized that trial courts should apply the language of the Rules," and collecting cases). That focus is no less important under Rule 23(a) than it was under the Rules we discussed in those cases. In class action litigation, however, the necessity of courts also focusing on the efficiency of the class action procedure is inescapable. Thus, we understand SCDC and SCDJJ's focus on "efficiencies," as this Court itself emphasized efficiency not only earlier in this opinion, and in *Hensley* as referenced above, but

---

[12] *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 n.9 (4th Cir. 2014) (explaining "a fail-safe class 'is defined so that whether a person qualifies as a member depends on whether the person has a valid claim'" (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012))).

also—using other terms—in *Gardner*. *See Gardner*, 353 S.C. at 22, 577 S.E.2d at 201 (holding the "individualized examination" of the prejudice question "negates the benefits of a class action suit").

With the goal of the efficiency of the class action in mind, therefore, we turn back to the language of the Rule and the "commonality" requirement—set forth in Rule 23(a)(2). In the Rule's terms, the commonality requirement is that "a party must show . . . 'there are questions of law or fact common to the class.'" *Gardner*, 353 S.C. at 21, 577 S.E.2d at 200 (quoting Rule 23(a), SCRCP). "In practical terms," as we stated in *Gardner*, "this means the party must articulate the existence of significant common, legal, or factual issues which bind the proposed class together." *Id.* (internal quotation marks omitted). In *Gardner*, despite our acknowledgement there were two questions common to all class members, we found the class representatives did not satisfy the commonality requirement because neither of those two issues was "a determinative issue." 353 S.C. at 21-22, 577 S.E.2d at 200-01. In *Hensley*, we stated "there must be a proper balance between common and individualized issues in order to achieve the efficiencies the class procedure was designed to promote." 429 S.C. at 152, 838 S.E.2d at 514. In *McGann v. Mungo*, 287 S.C. 561, 340 S.E.2d 154 (Ct. App. 1986)—the very first class action decided by our appellate courts after Rule 23(a) was adopted—Judge Goolsby wrote for the court of appeals that commonality requires "that the issues are sufficiently similar so that the class action will be a more efficient means of resolving the problem." 287 S.C. at 568, 340 S.E.2d at 158 (quoting Lightsey & Flanagan, *supra* at 198). In *Gardner*, *Hensley*, and *McGann*, this Court and the court of appeals recognized there is a qualitative component to the analysis of commonality; that is, the simple fact there are one or more common issues will not suffice.

These statements of our commentators and courts as to what is required before certifying a class action are consistent with the Supreme Court of the United State's treatment of commonality in *Dukes*. Contrary to earlier statements in the federal courts that commonality requires only that some question be common—regardless of the importance of the issue to the outcome of the litigation[13]—the *Dukes* Court

---

[13] *See, e.g.*, *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001) ("The test for commonality is not demanding. All that is required for each class is that there is one common question of law or fact: The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." (citations and internal quotation marks omitted)). The Fifth Circuit later recognized *Dukes* abrogated *James* and other cases setting forth a more relaxed

recognized the qualitative component of the analysis.  The Court began by stating the "crux of this case is commonality," and quoted Rule 23(a)(2), FRCP.  564 U.S. at 349, 131 S. Ct. at 2550, 180 L. Ed. 2d at 389.  The Court noted—again quoting Professor Nagareda—"That language is easy to misread, since 'any competently crafted class complaint literally raises common "questions.""'  564 U.S. at 349, 131 S. Ct. at 2551, 180 L. Ed. 2d at 389.  The Court then explained that to meet the Rule 23(a)(2) commonality requirement, "That common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  564 U.S. at 350, 131 S. Ct. at 2551, 180 L. Ed. 2d at 389-90.  The Court continued with the statement we quoted above—"commonality" requires "the capacity of a class-wide proceeding to generate common answers apt to *drive the resolution of the litigation*."  564 U.S. at 350, 131 S. Ct. at 2551, 180 L. Ed. 2d at 390 (emphasis omitted) (emphasis added).

We turn next to the concept of "predominance"—not specifically set forth in our Rule.  We often hear that South Carolina does not have what the federal courts call the "predominance" requirement.  We noted in *Hensley*, for example, the circuit court in that case stated, "South Carolina has no predominance . . . requirement." 429 S.C. at 151-52, 838 S.E.2d at 514.  This idea stems from the fact the drafters of our Rule 23 omitted the language of Federal Rule 23(b) and (c), and specifically the Rule 23(b)(3) requirement "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3) (1967).

The reasons for this omission are not entirely clear.  *See generally* Lightsey & Flanagan, *supra* at 191-95 (discussing the omission).  It is clear, however, the omission was not intended to expand the scope of class actions.  "Several factors argue against an expansive class action rule."  Lightsey & Flanagan, *supra* at 193; *see also* 1 James F. Flanagan et al., SOUTH CAROLINA CIVIL PROCEDURE 257 (4th ed. 2020) ("The history of the class action in this jurisdiction reflects its equitable origins and the joinder considerations found in the [Field Code]; both combined to limit its application as a procedural device." (citing A. Camden Lewis and Michael G. Sullivan, LEWIS AND SULLIVAN ON CLASS ACTIONS (S.C. Bar 2005))).  Lightsey and Flanagan suggested in 1985 that the omission of the Federal Rule 23(b) language was actually an effort to restrict the use of class actions, stating, "The drafters of the

---

commonality analysis.  *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839-42 (5th Cir. 2012).

new South Carolina Rules specifically rejected the most expansive use of the class action and omitted the language of Federal Rule 23(b) and (c) which defined the three general categories of class actions, and how they are to be treated in Federal Courts."  Lightsey & Flanagan, *supra* at 194.  Flanagan and his coauthors restated this suggestion in the current edition, "The drafters of the South Carolina Rules omitted the language of Federal Rule 23(b) and (c), . . . in part, to avoid adopting by implication the broad federal precedent then-existing."[14]  Flanagan et al., *supra* at 257.

Thus, the same statements of our commentators and courts as to what is required before certifying a class action also include the substance of the federal "predominance" requirement.  In *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016), the Supreme Court stated, "The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  577 U.S. at 453, 136 S. Ct. at 1045, 194 L. Ed. 2d at 134 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249, 138 L. Ed. 2d 689, 712 (1997)); *see also Tyson Foods*, 577 U.S. at 453, 136 S. Ct. at 1045, 194 L. Ed. 2d at 134 ("The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" (quoting 2 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:50 (5th ed. 2012))).  These statements from the Supreme Court are substantively indistinguishable from our statements in *Gardner* that the class plaintiff "must articulate the existence of significant common, legal, or factual issues which bind the proposed class together," and requiring "a determinative issue."  353 S.C. at 21, 577 S.E.2d at 200-01 (internal quotation marks omitted).

As we seek to read and apply Rule 23(a) as a whole and in its proper historical context, it becomes clear it is not possible to achieve the efficiencies the class action procedure was designed to bring to litigation without a qualitative analysis of commonality and some form of a predominance requirement.  We recognized this when we required "a determinative issue" under commonality in *Gardner*.  353 S.C. at 21, 577 S.E.2d at 200-01.  Lightsey and Flanagan recognized this when they wrote "the requirement that the common questions predominate over individual issues . . .

---

[14] *But see Littlefield v. S.C. Forestry Comm'n*, 337 S.C. 348, 354-55, 523 S.E.2d 781, 784 (1999) ("By omitting the additional requirements, Rule 23, SCRCP, endorses a more expansive view of class action availability than its federal counterpart.").  To this extent only, we overrule *Littlefield*.

is inherent in the general conditions for class actions." Lightsey & Flanagan, *supra* at 199. Neither this Court nor the court of appeals has ever acknowledged the popular notion that South Carolina does not require predominance. In fact, the court of appeals wrote in *Hensley* "there is some predominance-related requirement in Rule 23(a)," a comment we quoted with some indication we agreed. 429 S.C. at 152, 838 S.E.2d at 514.

Thus, whatever language is used to describe the principle of "commonality," and however we attempt to understand the omission of the word "predominate" from Rule 23, our commentators and courts have articulated over the last forty-one years a relatively strict and qualitative set of requirements for class certification under Rule 23(a), all designed to ensure "a proper balance between common and individualized issues."[15] *Hensley*, 429 S.C. at 152, 838 S.E.2d at 514. Today, we embrace the "inherent" requirement of predominance from Lightsey and Flanagan. We uphold the necessity of "significant common, legal, or factual issues which bind the proposed class together"—"a determinative issue" as we explained in *Gardner*. We change nothing in our law. Rather, to simply summarize what our Rule 23(a) standard has always required, a class plaintiff must demonstrate to the trial court that questions common to all class members are of such a critical degree of importance to the overall resolution of the litigation that the class-wide answers to those common questions are determinative, and thus overshadow the necessity of trying any individualized questions.

In section IV of this opinion, we engaged in a careful analysis of how this case would actually be tried as a class action. This is the "rigorous analysis" the Supreme Court required in *Tyson Foods* and *Dukes* and which we required in *Gardner* and other cases. *See Tyson Foods*, 577 U.S. at 453, 136 S. Ct. at 1045, 194 L. Ed. 2d at 134 (stating predominance "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case"); *Dukes*, 564 U.S. at 350-51, 131 S. Ct. at 2551-52, 180 L. Ed. 2d at 390 (stating commonality requires "a rigorous analysis"); *Waller v. Seabrook Island Prop. Owners Ass'n*, 300 S.C. 465, 467, 388 S.E.2d 799, 801 (1990) ("It is imperative the court apply a rigorous analysis to assure the prerequisites of Rule 23(a) have been satisfied."); *Gardner*, 353 S.C. at 21, 577 S.E.2d at 200 ("[T]he court must apply a rigorous analysis to determine each prerequisite is satisfied." (citing *Waller*)). Our analysis of a potential class-action

---

[15] As this discussion makes clear, even as we rely on the comments of Dean Lightsey and Professor Flanagan, we respectfully disagree with their statement, "There is no qualitative . . . test in the Rule." Lightsey & Flanagan, *supra* at 198.

trial in this case demonstrates conclusively that Henson cannot meet the Rule 23(a) standard. To the extent there is a common question here, it is overwhelmed by the numerous individual questions the jury and the trial court must litigate.

## VI. Conclusion

We reiterate that interlocutory class certification orders are never immediately appealable to the court of appeals. We emphasize that this Court will accept a petition for a common-law writ of certiorari on an interlocutory class-certification order only in rare and exceptional circumstances. As we explained here, this case is one of those very rare cases that meets the standard for our immediate review. On the merits, we reverse the circuit court's order certifying the classes and remand the case to the circuit court for discovery and trial of only the individual claims of the four named plaintiffs.

**REVERSED AND REMANDED.**

**KITTREDGE, C.J., JAMES, HILL and VERDIN, JJ., concur.**